### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TRISHA ECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:14-CV-00962-MHS |
| TANJA D. BATTLE, in her official | ) | |
| capacity as Executive Director of the | ) | |
| Georgia Board of Dentistry, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, through counsel, Samuel S. Olens, Attorney General for the State of Georgia, submit this brief in support of their Motion to Dismiss.

### INTRODUCTION

This action does not present a close constitutional question. Instead it improperly invites this Court to fundamentally restrict the State of Georgia in its legitimate efforts to protect the public health by regulating the practice of dentistry within its borders. Plaintiff Trisha Eck, d/b/a Tooth Fairies Teeth Whitening, asks this Court to define the practice of dentistry – a function that should be left to the State and the democratic process – in such a way as to permit admittedly untrained and non-licensed individuals to provide dental services to citizens of the State.

Moreover, as the complaint acknowledges, in the course of the administrative proceeding pertaining to her dental service business Plaintiff consented to and signed a Voluntary Cease and Desist Order, thereby avoiding and bypassing an available evidentiary hearing on the matter that would have been subject to judicial review in the state courts.  The Order on its face shows that the Georgia Board of Dentistry retains jurisdiction to address further violations of the applicable state laws and regulations by Plaintiff or her dental service business.

This case should be dismissed for several reasons.  First, it invites unwarranted federal interference with the State's important function of providing for the health and welfare of its citizens.  Dismissal is required under the *Rooker-Feldman* doctrine as the lawsuit is an improper attempt to bypass available state review procedures; in the alternative, dismissal is required under *res judicata* principles and under the *Burford* and *Younger* abstention doctrines.  Second, the relief that Plaintiff seeks is not available.  Defendants function as judicial officers in the state proceedings at issue such that injunctive relief is not available for her claims under 42 U.S.C. § 1983.  Declaratory relief also is not available because the state provided an adequate remedy at law.

Third, in substance the complaint fails to state a claim.  As support for equal protection and due process claims the complaint disingenuously suggests that the

relevant comparators for Plaintiff and her dental service business are individual citizens (notably including herself) who are allowed to purchase over the counter teeth whitening products and to self-apply those products without being subject to regulation by the Georgia Board of Dentistry.  This attempted comparison is a red herring and there is no unequal treatment.  As it must, the complaint acknowledges that this case does not involve a fundamental right or a protected class such that rational basis review applies to all of the asserted claims.  Federal law does not forbid classifications and instead allows the States to enact regulatory laws that rationally further a legitimate state interest.  Here, the regulatory aim is dental services and the state interest is protecting the public health.  In this context, the relevant comparison is between duly trained and licensed dentists, on the one hand, and on the other hand untrained and unlicensed individuals who would hold themselves out to the public as capable of providing and in fact provide dental services.  Plaintiff and her business have not been subjected to unequal treatment and instead are subject to the same restrictions on the practice of dentistry as apply to all persons in Georgia.  The restrictions are not unlawful and instead rationally further the important state interest of protecting the public health.  For these reasons this action should be dismissed.

# FACTUAL BACKGROUND[1]

## A. Plaintiff's Dental Service Business

Plaintiff refers to herself as a "teeth whitening entrepreneur" and as the owner and operator of Tooth Fairies Teeth Whitening, a business that she runs from "space rented in a medical-office building in a commercial area of Warner Robbins." (Doc. 1, ¶¶ 1, 9). While the complaint draws a comparison between Plaintiff's business and the purchase of over-the-counter teeth whitening products for self-application, it makes clear that Plaintiff does not only sell a product but provides teeth whitening services. The services include supervision and instruction on the application of teeth whitening products to a client's teeth. (*See id.*, ¶¶ 2, 3, 14, 15, 16, 20, 21, 42, 46, 47, 48, 58). The services are provided in Plaintiff's rented medical office space, in a chair provided by Plaintiff for the application process, using an "'enhancing light,' which either the entrepreneur or the customer may position in front of the customer's mouth," (*id.*, ¶ 16), and by "techniques" Plaintiff claims to have learned in training to provide the services. (*Id.*, ¶¶ 42, 46).

---

[1] For purposes of this motion factual allegations of the complaint are accepted as true, legal conclusions and unwarranted deductions of fact are not. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). A description of the state regulatory scheme also is included in this section.

**B. Georgia's Statutory Scheme for Regulating the Practice of Dentistry**

The State of Georgia determined that the unlicensed practice of dentistry is "a menace and a nuisance dangerous to the public health, safety, and welfare." O.C.G.A. § 43-11-2(e).  Accordingly, the State legislature enacted a regulatory scheme to define the practice of dentistry, to delineate the acts which constitute the practice of dentistry, to provide for licensing and licensing review procedures, and to provide a mechanism for prohibiting the unlicensed practice of dentistry within the State.  *See* O.C.G.A. § 43-11-1, *et seq.* (Dental Practice Act or Act).

Under the Act "dentistry" is defined as follows:

> "Dentistry" means the evaluation, diagnosis, prevention, or treatment, or any combination thereof, whether using surgical or nonsurgical procedures, of diseases, disorders, or conditions, or any combination thereof, of the oral cavity, maxillofacial area, or the adjacent and associated structures, or any combination thereof, and their impact on the human body provided by a dentist, within the scope of his or her education, training, and experience, in accordance with the ethics of the profession and applicable law, including, but not limited to, the acts specified in Code Section 43-11-17.

O.C.G.A. § 43-11-1(6).  The referenced code section 43-11-17 further defines dentistry to include the following:

> § 43-11-17.  Acts which constitute the practice of dentistry
>
> (a) Except as expressly provided in this chapter, any

person who performs any of the following procedures, operations, or services shall be regarded as practicing dentistry within the meaning of this chapter:

(1) Operates or performs part of any dental operation of any kind upon the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures for the treatment of diseases or lesions of such structures;

. . .

(4) Does any dental operation whatsoever on the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures;

(5) Examines any human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures or takes an impression thereof for the purpose of diagnosing, treating, or operating upon the same;

(6) Supplies, makes, fits, repairs, adjusts, or relines, directly for or to an ultimate user of the product in the State of Georgia, any appliance, cap, covering, prosthesis, or cosmetic covering, as defined by rules and regulations established by the board, usable on or as human teeth unless such provision, production, fit, repair, adjustment, or reline of such product is ordered by and returned to a licensed dentist or unless such product is used solely for theatrical purposes as defined by rules and regulations established by the board;

(7) Undertakes to do or perform any physical evaluation of a patient in his or her office or in a hospital, clinic, or other medical or dental facility prior to, incident to, and appropriate to the performance of any dental services or oral or maxillofacial surgery;

. . .

(9) By any means whatsoever makes it known, implies, or holds out to the public in any fashion that such person

        will do any of the operations, procedures, or services set
        forth in this subsection.

O.C.G.A. § 43-11-17.

The Act provides for the creation of the Georgia Board of Dentistry to "perform such duties and possess and exercise such powers, relative to the protection of the public health and the control and regulation of the practice of dentistry as this chapter prescribes and confers upon it." O.C.G.A. § 43-11-7. The Board is authorized to "adopt, amend and repeal rules and regulations" pertaining to the practice of dentistry, to "keep a docket of public proceedings, actions, and filings," to initiate investigations, to conduct hearings and to "administer oaths, subpoena witnesses and documentary evidence including dental records, and take testimony in all matters relating to its duties," to "issue cease and desist orders to stop the unlicensed practice of dentistry ... and impose penalties for such violations," and to "refer cases for criminal prosecution or injunctive relief to appropriate prosecuting attorneys ...." O.C.G.A. § 43-11-7(1), (9), (13-18).

The disposition of cases before the Board is as provided in the Georgia Administrative Procedures Act. *See* O.C.G.A. § 43-11-48; O.C.G.A. §§ 50-13-13, *et seq.* (Georgia APA). The Georgia APA provides for a full evidentiary hearing on contested matters, for judicial review of the Board's decision in such matters in

the Superior Court, and for final review in the State Court of Appeals or the State Supreme Court.  *See* O.C.G.A. §§ 50-13-13, 50-13-19, 50-13-20.

### C. Plaintiff's Execution Of A Voluntary Cease And Desist Order Concerning The Dental Services Provided By Tooth Fairies Teeth Whitening

As stated, as defined under the Act the practice of dentistry in Georgia includes: "any person who performs any of the following procedures, operations, or services … Supplies, makes, fits, repairs, adjusts, or relines, directly for or to an ultimate user of the product in the State of Georgia, any appliance, cap, covering, prosthesis, or cosmetic covering, as defined by rules and regulations established by the board …." O.C.G.A. § 43-11-17(6).  The Board adopted regulations defining "Appliance" as "any fixed or removable structure ... used to prevent adverse dental conditions, including but not limited to changing the appearance of teeth, changing the shape and shade of teeth …." Ga. Comp. R. & Regs., r. 150-14-.01(1).

The Board interprets the Act and its implementing regulations to include teeth whitening services as the practice of dentistry.  (Doc. 1, ¶ 30 and Ex. A).  In October 2013, the Board issued a subpoena to Plaintiff and Tooth Fairies Teeth Whitening, demanding information about her customers and business practices. (*Id.*, ¶ 9).  After issuance of the subpoena, Plaintiff consented to and executed a Voluntary Cease and Desist Order, expressly acknowledging and waiving her right

to an evidentiary hearing and resolving the Board's investigation into her practice. (*See id.*, Ex. B).  In relevant part, the Order states that Plaintiff "has consented to this Order and agrees to voluntarily cease and desist from any act or practice that requires licensure under [the Act] …."  (*Id.*).  The Order provides that it shall "remain in effect until such time as [Plaintiff] is properly licensed with the Board, or until further order."  (*Id.*).  And the Order indicates that the Board retains jurisdiction to impose a monetary fine for a violation of its terms.  (*Id.*).

## ARGUMENT AND CITATION OF AUTHORITY

The complaint asserts claims under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 including violations of the Fourteenth Amendment equal protection, due process and privileges and immunities clauses.  (Doc. 1 at 15-19) (Counts I-III). As relief it seeks a declaration that O.C.G.A. § 43-11-1 and -17 and Ga. Comp. R. & Regs., r. 150-14-.01, "as applied to teeth-whitening services provided by Plaintiff, and others similarly situated," are unconstitutional, and an injunction prohibiting their enforcement.  (*Id.* at 19-20).  As explained below, under the *Rooker-Feldman* doctrine the Court lacks subject matter jurisdiction and dismissal also is required for a number of other reasons.

### A. This Court Lacks Subject Matter Jurisdiction Over The Claims Asserted Under The *Rooker-Feldman* Doctrine

This Court lacks jurisdiction under the *Rooker-Feldman* doctrine, which recognizes that "appellate jurisdiction to reverse or modify a state-court judgment is lodged ... exclusively" in the Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 283 (2005); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia v. Feldman*, 460 U.S. 462 (1983). The Eleventh Circuit has explained that, "because federal review of state court decisions is entrusted solely to the Supreme Court, the lower federal court may not decide federal issues that are raised in state proceedings and inextricably intertwined with the state court's judgment." *Staley v. Ledbetter*, 837 F.2d 1016, 1017 (11th Cir. 1988) (quotations and citation omitted).

Although it has been limited in its application, the *Rooker-Feldman* doctrine plainly bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment ... based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Exxon Mobil Corp.*, 544 U.S. at 287 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994)). The doctrine also prohibits the federal district courts from entertaining "an original action alleging that a state court violated the Constitution by giving effect to an

unconstitutional state statute." *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 369-370 n. 16 (1990)).

The complaint runs directly against these principles.  The suit challenges the Voluntary Cease and Desist Order which prohibits Plaintiff from providing teeth-whitening services without a dental license, and it seeks to have the Order overturned on the asserted grounds that it violates Plaintiff's rights under the U.S. Constitution.[2]  Under the above authorities, all issues regarding the propriety of the State court process and the constitutionality of the Dental Practice Act and the Board's interpreting regulation could have been raised, and should have been raised, in the available State proceedings.  Raising the claims in this collateral federal action is improper under *Rooker-Feldman* and this Court is without jurisdiction to consider the claims.

This Court reached the same result in *Alyshah Immigration Agency, Inc. v. State Bar of Georgia*, 2005 U.S. Dist. LEXIS 43624 (N.D. Ga. Mar. 11, 2005) (Thrash, J.).  There the State Bar initiated an action in state court seeking to enjoin the plaintiff, who was not licensed to practice law in the state, from practicing

---

[2] It does not matter that the Order was entered as part of the administrative process rather than by a state court.  Plaintiff had the ability to seek judicial review of the Order and in any event it is recognized in Georgia as having preclusive effect.  *See, e.g., Blackwell v. Ga. Real Estate Comm'n*, 205 Ga. App. 233, 234, 421 S.E.2d 716, 717 (1992); *Garrett v. K-Mart Corp.*, 197 Ga. App. 374, 375-377, 398 S.E.2d 302, 304-305 (1990).

immigration law.  *See id.*, *3.  The parties resolved the matter by consent order which provided that the plaintiff was "permanently forbidden, restrained and enjoined from engaging in the practice of law within the State of Georgia."  *Id.* Later the plaintiff filed a lawsuit in this Court asserting constitutional challenges to the consent order.  The Court stated that the "order enjoining the Plaintiffs from engaging in the practice of law is the conclusive judgment entered by the state court.  The Plaintiffs had, but did not utilize, ample opportunity to raise constitutional claims in the state court proceedings."  *Id.*, *4.  It further explained that *Rooker-Feldman* barred the claim because:

> The Plaintiffs' constitutional claims cannot succeed
> without this Court concluding that the state court
> incorrectly permitted the Consent Order to infringe the
> Plaintiffs' constitutional rights.  Hearing the Plaintiffs'
> constitutional claims is tantamount to reviewing the
> merits of the Consent Order.

*Id.*, *4-5.  For the same reasons this Court lacks subject matter jurisdiction to hear Plaintiff's constitutional challenges.

### B. Plaintiff's Claims Are Barred By *Res Judicata*

"When deciding whether claims are barred by *res judicata*, federal courts apply the law of the state in which they sit."  *Starship Enters. of Atlanta, Inc. v. Coweta County*, 708 F.3d 1243, 1252-1253 (11th Cir. 2013).

- 12 -

In Georgia *res judicata* applies where (1) there was a final adjudication on the merits (2) by a court of competent jurisdiction and (3) there is identity of parties and subject matter in the causes of action.  *See* O.C.G.A. 9-12-40; *see also Dep't of Transp. v. Revco Discount Drug Centers*, 322 Ga. App. 873, 875, 746 S.E.2d 631, 633 (2013); *Gunby v. Simon*, 277 Ga. 698, 699, 594 S.E.2d 342, 343 (2004); *Alyshah*, 2005 U.S. Dist. LEXIS 43624, *6.  *Res judicata* bars re-litigation of claims that were litigated or that could have been litigated in the first action.  *See* O.C.G.A. 9-12-40.  Importantly, in Georgia *res judicata* bars re-litigation of claims previously determined by an administrative agency.  *See, e.g., Blackwell*, 205 Ga. App. at 234, 421 S.E.2d at 717; *Garrett*, 197 Ga. App. at 375-377, 398 S.E.2d at 304-305; *and see Rhoades v. Casey*, 196 F.3d 592, 601-602 (5th Cir. 1999) (applying similar Texas *res judicata* bar to prohibit re-litigation of claims previously resolved by agency consent order).

Again this Court's decision in *Alyshah* is instructive.  In addition to its finding that the asserted constitutional claims were barred by the *Rooker-Feldman* doctrine, the Court held that *res judicata* bars "claims which may properly be encompassed by the language of the consent order."  2005 U.S. Dist. LEXIS 43624, *6-7.  The plaintiff's federal constitutional claims were within the scope of the consent order and so they were barred by *res judicata*.  *See id.*, *8.

For these reasons, Plaintiff's claims are barred by *res judicata*.

**C. The Court Should Abstain From Deciding The Constitutional Questions In This Case Under The *Burford* And *Younger* Abstention Doctrines**

Two abstention doctrines counsel against this Court's exercise of jurisdiction to decide the constitutional questions that are presented in this case.

First, "under the *Burford* abstention doctrine . . . federal courts may dismiss certain cases in deference to complex state administrative procedures." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1167 (11th Cir. 2007) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). The Supreme Court has summarized *Burford* abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (*citing New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989)). "The purpose of *Burford* abstention is to 'protect[] complex state

administrative processes from undue federal interference . . . .'" *Id.* (citing *New Orleans Pub. Serv., Inc.*

This case satisfies the criteria for *Burford* abstention.  Defendants' alleged acts as members of the Georgia Board of Dentistry, including the interpretation and application of the definition of "dentistry" in Ga. Comp. R. & Regs., r. 150-14-.01(1), relate to the unlicensed practice of dentistry which as stated Georgia has determined is "a menace and a nuisance dangerous to the public health, safety, and welfare."  O.C.G.A. § 43-11-2(e).  Georgia has enacted a comprehensive scheme to regulate the practice of dentistry, and such regulation is best addressed by the State and the available administrative process.  For this Court to accept Plaintiff's invitation to attempt to define or set the parameters for the practice of dentistry in Georgia would have an impermissibly disruptive effect on the State's policy.

Second, *Younger* abstention doctrine provides another basis for dismissal.  Under *Younger v. Harris*, 401 U.S. 37 (1970), "federal courts should abstain from suits aimed at restraining pending state criminal prosecutions."  *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1215 (11th Cir. 2002) (citing *Younger*, 401 U.S. at 41).  "The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved."  *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432

(1982).  *Younger* applies in cases seeking declaratory relief, *Samuels v. Mackell*,
401 U.S. 66, 73 (1971), and also to cases seeking injunctive relief concerning state
civil administrative proceedings "so long as in the course of those proceedings the
federal plaintiff would have a full and fair opportunity to litigate his constitutional
claim."  *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 627
(1986).  The doctrine furthers "the longstanding national public policy, based on
principles of comity and federalism, of allowing state courts to try cases—already
pending in state court—free from federal court interference."  *Butler v. Ala.
Judicial Inquiry Comm'n.*, 245 F.3d 1257, 1261 (11th Cir. 2001).

    The prerequisites for *Younger* abstention are (i) a pending state proceeding[3]
(ii) that implicates important state interests and (iii) that provides an adequate
opportunity for raising federal constitutional questions.  *See For Your Eyes Alone,
Inc.*, 281 F.3d at 1215-1216 (citing *Middlesex*); *accord 31 Foster Children v. Bush*,
329 F.3d 1255, 1274 (11th Cir.), *cert. denied*, 540 U.S. 984 (2003).  These
prerequisites are met here.  First, there is an ongoing state proceeding in the form

---

[3] This element requires that the federal proceeding interfere with an ongoing state
proceeding, but the relief sought need not directly interfere with or terminate the
proceeding.  *See 31 Foster Children*, 329 F.3d at 1275-1276 (citing *O'Shea v.
Littleton*, 414 U.S. 488, 500 (1974)).  *Younger* abstention is appropriate where
federal plaintiffs seek an injunction "aimed at controlling or preventing the
occurrence of specific events that might take place in the course of future state
criminal trials."  *Id.*

of the Voluntary Cease and Desist Order, which by its terms "shall remain in effect until such time as [plaintiff] is properly licensed with the board, or until further order." (Doc. 1, Ex. B). The Order indicates that the Board retains jurisdiction to impose a monetary fine for a violation of its terms. (*Id.*). Second, this case implicates the important state interest of protecting the public health. Third, actions by the Board to impose penalties for violations of the Order or for violations of the Dental Practice Act are subject to the provisions of the Georgia APA, which provides an adequate opportunity for raising federal constitutional questions. *See* O.C.G.A. § 50-13-19(h)(1).

Moreover, *Younger* abstention applies because the very aim of this action is to interfere with the State's ongoing regulatory and administrative processes -- *i.e.*, to enjoin the operation of the consent order by which Plaintiff has agreed not to engage in the unlicensed practice of dentistry and which subjects her to a monetary fine for a violation of its terms. This is the very interference with important state functions that *Younger* seeks to avoid.

### D. Plaintiff Is Not Entitled To Injunctive Or Declaratory Relief

In relevant part section 1983 provides: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or

declaratory relief was unavailable." 42 U.S.C. § 1983. By this clear language Plaintiff does not have a claim for injunctive relief because Defendants function as judicial officers in the state proceedings at issue.

Defendants recognize that in *Pulliam v. Allen*, 466 U.S. 522 (1984), the Supreme Court held that judicial immunity does not apply to claims for injunctive relief in a section 1983 action. *See id.* at 536. Section 1983 was amended after *Pulliam*, *see Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2006), and the statutory language quoted above now forecloses injunctive relief for judicial acts. The functional approach that is applied in immunity decisions, discussed below, should also be applied when applying this statutory limitation on injunctive relief.

The Supreme Court applies a functional approach to immunity law such that quasi-judicial immunity is extended to those administrative or executive officials who perform functions that are closely associated with the judicial process. *See Cleavinger v. Saxner*, 474 U.S. 193, 200-201 (1985); *see also Hart v. Hodges*, 587 F.3d 1288, 1294-1295 (11th Cir. 2009); *Evans v. Ga. Peace Officer Standards & Training Council*, 2006 U.S. Dist. LEXIS 19415, *16 (N.D. Ga. Mar. 29, 2006). "This functional approach looks to the nature of the function performed, not to the identity of the person who performed it." *Hart*, 587 F.3d at 1295.

As members of the Board of Dentistry, Defendants are authorized to "keep a docket of public proceedings, actions, and filings," to initiate investigations, to conduct hearings and to "administer oaths, subpoena witnesses and documentary evidence including dental records, and take testimony in all matters relating to its duties," and to "issue cease and desist orders to stop the unlicensed practice of dentistry ... and impose penalties for such violations." O.C.G.A. § 43-11-7(9), (13-17). Cease and desist orders are issued in administrative proceedings where the Board is charged with receiving and weighing evidence and entering rulings based on the evidence. *See* O.C.G.A. §§ 43-11-48, 50-13-13.

These are inherently judicial functions. *See Cleavinger*, 474 U.S. at 201-202 (discussing factors characteristic of the judicial process); *see also Butz v. Economou*, 438 U.S. 478, 513 (1978) ("There can be little doubt that the role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge."). Therefore, because Defendants act as judicial officers in the state proceedings in issue, injunctive relief is not available under section 1983.[4]

---

[4] Section 1983 would allow injunctive relief only if "a declaratory decree was violated or declaratory relief was unavailable" and there is no allegation in the complaint to this effect. Again state law permits constitutional challenges and in fact specifically provides for declaratory relief. *See* O.C.G.A. § 50-13-10.

Declaratory relief also is not available in this action because the state provided an adequate remedy at law which Plaintiff failed to pursue. *See Bolin*, 225 F.3d at 1242-1243. Plaintiff had an adequate remedy at law in the judicial review provided by the Georgia APA. Because she failed to avail herself of that remedy declaratory relief is not available in this Court. *See Simmons v. Edmonson*, 2006 U.S. Dist. LEXIS 75127, *5-7 (N.D. Ga. Oct. 16, 2006) (Duffey, J.).

**E. The Complaint Fails To State A Claim**

Section 1983 provides a cause of action for damages against every person who, acting under color of state law, deprives another of "rights, privileges, or immunities, secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights," and instead provides a "method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3(1979)). When a court considers a section 1983 claim, it must first identify the specific right allegedly infringed, and then determine the validity of the claim "by reference to the specific constitutional standard which governs that right." *Albright*, 510 U.S. at 271; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

**1.  Count I Fails To State An Equal Protection Claim**

Count I is a Fourteenth Amendment equal protection claim.  "The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner."  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).  The degree of scrutiny for such claims depends on the right asserted:

> When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification. [ ].  If a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny. [ ].  If an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the ordinance must be rationally related to the achievement of a legitimate government purpose.

*Id.* (internal quotations and citations omitted).

As the complaint acknowledges (Doc. 1, ¶¶ 66, 73-74), this case does not involve a fundamental right or a protected class such that rational basis review, described below, applies to all of the asserted claims.  States have the power to regulate trades, businesses and professions, particularly those concerning public health and safety.  *See Watson v. State of Md.*, 218 U.S. 173, 176 (1910).  "The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity."  *Dent v. West Virginia*, 129 U.S. 114,

122 (1889); *see also Bates v. State Bar of Ariz.*, 433 U.S. 350, 361 (1977)

(professional licensure is "at the core of the State's power to protect the public");

*Sporhase v. Neb. ex rel. Douglas*, 458 U.S. 941, 956 (1982) (State's power to

regulate to protect the health of its citizens "is at the core of its police power").

The Supreme Court has recognized only a limited number of fundamental rights,

*see Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), and of import here there

is no fundamental "right to pursue a particular occupation."  *Jones v. Bd. of*

*Cmm'rs of the Ala. State Bar*, 737 F.2d 996, 1000 (11th Cir. 1984).

     The first shortcoming of Count I is that the equal protection clause requires

similar treatment *for similarly situated persons*.  *See Campbell v. Rainbow City*,

434 F.3d 1306, 1314 (11th Cir. 2006) (noting "different treatment of dissimilarly

situated persons does not violate the equal protection clause").  Comparators must

be similarly situated in all relevant respects.  *See id; accord Griffin Indus., Inc. v.*

*Irvin*, 496 F.3d 1189, 1202-03 (11th Cir. 2007).  The complaint suggests relevant

comparators are persons who purchase teeth whitening products and self-apply

those products in their home.  This is a red herring.  Like those persons Plaintiff

can purchase and self-apply such products in her own home but that is not what her

business is about.  Plaintiff provides teeth whitening services including supervision

and instruction on the application of teeth whitening products to a client's teeth.

The services are provided in Plaintiff's rented medical office space, in a chair that she provides for the application process, using an enhancing light that she provides also as part of the services, by techniques that Plaintiff claims to have acquired in training to provide the services. *See supra* p. 4.

While the equal protection clause requires similar treatment for similarly situated persons, it "does not forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  In the absence of a fundamental right or protected class, there is no equal protection violation where a classification rationally furthers a legitimate state interest.  This highly deferential analysis is as follows:

> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose--a goal--which the enacting government body could have been pursuing.  The actual motivations of the enacting governmental body are entirely irrelevant. [ ].  Moreover, the equal protection clause does not require government decision makers to articulate any reason for their actions [ ], nor does it require any record evidence of a legitimate purpose. [ ].
>
> The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose.  The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body. [ ].  As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction

> arbitrary or irrational, the legislation survives rational-
> basis scrutiny. [ ].  As with the legitimate purpose
> inquiry, courts are not confined to the record when
> determining whether a rational basis for the classification
> exists. [ ].  In sum, those attacking the rationality of the
> legislative classification have the burden to negative
> every conceivable basis which might support it.

*Haves v. City of Miami*, 52 F.3d 918, 921-922 (11th Cir. 1995) (internal quotations and citations omitted).  "On rational-basis review, a classification in a statute … comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it."  *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314-315 (1993) (citations omitted).

Here again the stated regulatory goal is protecting public health.[5]  Georgia determined that the unlicensed practice of dentistry is "a menace and a nuisance dangerous to the public health," O.C.G.A. § 43-11-2(e), and enacted a statutory scheme to define and regulate the practice of dentistry.  To this end, the Dental Practice Act speaks in terms of dental services, including services provided for the purpose of changing the appearance or shade of teeth, and it seeks to ensure that dental services are provided by persons who are trained and licensed to provide such services.  *See* O.C.G.A. § 43-11-1(6) (defining "dentistry" as "evaluation,

---

[5] Protecting the public health is a legitimate state interest.  *See, e.g., Deen v. Egleston*, 597 F.3d 1223, 1229 (11th Cir. 2010).

diagnosis, prevention, or treatment ..."); O.C.G.A. § 43-11-17(6) (defining the practice of dentistry as including "any person who performs any of the following procedures, operations, or services …").

In this context, the relevant comparison is between trained and licensed dentists, on the one hand, and on the other hand untrained and unlicensed individuals who would hold themselves out to the public as capable of providing and in fact provide dental services.  The State rationally could determine that the public health is best served by requiring that dental services be provided by persons who are trained and licensed to provide such services.  Plaintiff is not trained or licensed as a dentist and is not similarly situated to such persons.  (Doc. 1, ¶ 63) ("Plaintiff is not a licensed dentist and is not eligible to become a licensed dentist without nearly a decade of training and education.").

There is no impermissible classification at work here.  Plaintiff and her business have not been subjected to unequal treatment and instead are subject to the same restrictions on the practice of dentistry as apply to all persons in Georgia. The restrictions rationally further the important state interest of protecting the public health.[6]  Count I fails to state an equal protection claim.

---

[6] To the extent that a classification drawn by a State legislature is improvident or unwise (which Defendants deny here), the remedy lies in the democratic process, not judicial action.  *See Deen*, 597 F.3d at 1230; *Doe v. Moore*, 410 F.3d 1337,

### 2.  Count II Fails To State A Substantive Due Process Claim

Count II is a Fourteenth Amendment substantive due process claim.

Substantive due process protects those rights that are "fundamental" or in other

words "implicit in the concept of ordered liberty."  *Palko v. Connecticut*, 302 U.S.

319, 325 (1937).  As previously stated, the Supreme Court has recognized only a

limited number of fundamental rights:

> In a long line of cases, we have held that, in addition to
> the specific freedoms protected by the Bill of Rights, the
> "liberty" specially protected by the Due Process Clause
> includes the rights to marry [ ]; to have children [ ]; to
> direct the education and upbringing of one's children [ ];
> to marital privacy [ ]; to use contraception [ ]; to bodily
> integrity [ ], and to abortion [ ].  We have also assumed,
> and strongly suggested, that the Due Process Clause
> protects the traditional right to refuse unwanted
> lifesaving medical treatment.

*Washington*, 521 U.S. at 720 (internal citations omitted).  There is no fundamental

"right to pursue a particular occupation."  *Jones*, 737 F.2d at 1000 ("The Court,

however, has never held that the right to pursue a particular occupation is a

fundamental right, and it has not applied strict scrutiny review to classifications

affecting an individual's pursuit of his or her occupation.").

---

1346-1347 (11th Cir. 2005) ("The Constitution presumes that, absent some reason
to infer antipathy, even improvident decisions will eventually be rectified by the
democratic process and that judicial intervention is generally unwarranted no
matter how unwisely we may think a political branch has acted.").

In the absence of a fundamental right, rational basis review applies to the due process claim that is asserted in Count II, and the claim fails for the reasons stated with respect to the equal protection claim in Count I. *See Jones*, 737 F.2d at 1001; G*ary*, 311 F.3d at 1339, n. 10.

### 3. Count III Fails To State A Claim Under The Fourteenth Amendment Privileges And Immunities Clause

Count III is a claim under the Fourteenth Amendment privileges and immunities clause, which states, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const., Amend. XIV § 1. This provision is limited as follows:

> The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law.

*Snowden v. Hughes*, 321 U.S. 1, 6-7 (1944).

The complaint asserts, "The Privileges or Immunities Clause protects the right to earn an honest living." (Doc. 1, ¶ 77). This is the same interest asserted as

the basis for the substantive due process claim in Count II.  (*See id.*, ¶ 71).[7]  Again

there is no federal constitutional right concerning one's occupation.  The rights and

limitations that are at issue in this case are provided by state law -- specifically, the

right of a licensed dentist to practice dentistry as provided in the Dental Practice

Act.  Count III does not identify a right "incident to citizenship of the United

States" and so it fails to state a claim.

## CONCLUSION

Defendants ask that the Court dismiss the complaint and all of the claims

asserted for the reasons stated herein.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

DEVON ORLAND          554301
Senior Assistant Attorney General

s/ Roger A. Chalmers          118720
ROGER A. CHALMERS
Assistant Attorney General

---

[7] To the extent the complaint attempts to allege some separate claim in Count III it
fails because it contains no allegations or assertions that would provide Defendants
with notice as to its substance.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Roger A. Chalmers
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

## **CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D**

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C.

The brief is prepared in 14 point Times New Roman font.

s/ Roger A Chalmers

## **CERTIFICATE OF SERVICE**

I certify that I have this day served the foregoing pleading with the Clerk of

Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

Yasha Heidari
Lawrence G. Salzman
Paul Sherman

I further certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants: NONE.

This 24th day of April, 2014.

s/ Roger A Chalmers