# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| TRISHA ECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:14-CV-00962- |
| | ) | MHS |
| TANJA D. BATTLE, in her official | ) | |
| capacity as Executive Director of the | ) | |
| Georgia Board of Dentistry, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

---

Lawrence G. Salzman*
Paul Sherman*
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: lsalzman@ij.org;
psherman@ij.org
* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

Yasha Heidari (GA Bar No. 110325)
Heidari Power Law Group, LLC
P.O. Box 79217
Atlanta, GA 30357
Tel: (404) 939-2742
Fax: (404) 601-7852
Email:  yasha@hplawgroup.com

*Local Counsel for Plaintiff*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................ 1

ARGUMENT AND CITATION OF AUTHORITY ............................. 3

I.    THE *ROOKER-FELDMAN* DOCTRINE HAS NO APPLICATION TO THIS CASE. ............................................................................. 3

II.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF *RES JUDICATA*. ......................................................................... 6

    A.   *Res Judicata* Does Not Apply Because Ms. Eck's Controversy with the Board Was Settled by a Consent Order, and That Order Does Not Encompass Her Constitutional Claims. ..................................... 7

    B.   *Res Judicata* Does Not Apply Because There Is No Identity of Claims and Ms. Eck Had No Full and Fair Opportunity to Litigate Her Constitutional Claims. ................................................. 10

    C.   The Government Is Attempting to Impose an Improper Administrative Exhaustion Requirement on § 1983 Actions. ....... 12

III.  NEITHER THE *BUFORD* NOR *YOUNGER* DOCTRINES JUSTIFY THE COURT'S ABSTENTION. .............................................. 13

    A.   *Burford* Abstention. .......................................................... 14

    B.   *Younger* Abstention. ......................................................... 16

IV.  DECLARATORY AND INJUNCTIVE RELIEF ARE AVAILABLE REMEDIES IN THIS CASE. ....................................................... 18

<u>Page</u>

**V.  PLAINTIFF'S COMPLAINT SUFFICIENTLY ALLEGES THAT THE BOARD'S TEETH-WHITING PROHIBITION VIOLATES THE EQUAL PROTECTION, DUE PROCESS, AND PRIVILEGES OR IMMUNITIES CLAUSES.** ...................................................21

   **A.  Equal Protection.** ...............................................22

   **B.  Due Process.** ....................................................26

   **C.  Privileges or Immunities.** ...............................29

**CONCLUSION** ........................................................30

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D**

**CERTIFICATE OF SERVICE**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacare, Inc.-N v. Baggiano*, 785 F.2d 963 (11th Cir. 1986) ...........................12, 13

*Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336 (1989) .............25

*Alyshah Immigration Agency, Inc., et al. v. State Bar of Georgia*,
    No. 1:04-CV-1017-TWT, 2005 U.S. Dist. LEXIS 43624
    (N.D. Ga. Mar. 11, 2005) ..........................................................................5, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................21

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ..............................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................22

*Blackwell v. Ga. Real Estate Comm'n*, 421 S.E.2d 716 (Ga. App. 1992)...............10

*Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000) .................................................20, 21

*Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260 (11th Cir. 2000) ..............................14

*BT Inv. Managers v. Lewis*, 559 F.2d 950 (5th Cir. 1977) .....................................16

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) .........................................................14

*Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977) ................25

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)..............................25

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ............................................................20

*Conn v. Gabbert*, 526 U.S. 286 (1999) ...................................................................27

**Page(s)**

*Cormier v. Horkan*, 397 F. App'x 550 (11th Cir. 2010) ............................................4

*Cornwell v. Cal. Bd. of Barbering and Cosmetology*, 962 F. Supp. 1260
    (S.D. Cal. 1997) ................................................................................26

*Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999)................................28

*Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) ...............................26, 27, 28, 29

*Dep't of Transp. v. Revco Disc. Drug Ctr., Inc.*, 746 S.E.2d 631
    (Ga. App. 2013) ................................................................................10

*Ex Parte Young*, 209 U.S. 123 (1908) ...................................................................19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)................3, 4

*Flint River Mills v. Henry*, 216 S.E.2d (Ga. 1975).................................................11

*For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209
    (11th Cir. 2002) .........................................................................17, 18

*Georgia State Fin. & Inv. Comm'n v. XL Specialty Ins. Co.*,
    694 S.E.2d 193 (Ga. App. 2010) .......................................................8

*Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243 (11th Cir. 2009) .......................13

*Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612 (1985)....................................25

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) .......................................................12

*James v. Strange*, 407 U.S. 128 (1972) ..................................................................25

*Kentucky v. Graham*, 473 U.S. 159 (1985)..............................................................19

*Lance v. Dennis*, 546 U.S. 459 (2006)..................................................................3, 4

**Page(s)**

*Lawrence v. Texas*, 539 U.S. 558 (2003) .................................................................25

*Lindsey v. Normet*, 405 U.S. 56 (1972) ...................................................................25

*Mayer v. City of Chicago*, 404 U.S. 189 (1971) .......................................................25

*Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) ...............................................26

*Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985) .................................................25

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423
       (1982) ...............................................................................................................17

*Moore v. Bonner*, 695 F.2d 799 (4th Cir. 1982) .....................................................13

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (11th Cir. 2004)..........7, 8

*Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982)...........................12, 21

*Plyler v. Doe*, 457 U.S. 202 (1982)..........................................................................25

*Quinn v. Millsap*, 491 U.S. 95 (1989).......................................................................25

*Reed v. Reed*, 404 U.S. 71 (1971) ...........................................................................25

*Rindley v. Gallagher*, 719 F. Supp. 1076 (S.D. Fla. 1989)................................15, 16

*Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991).......................................15, 19

*Romer v. Evans*, 517 U.S. 620 (1996) ......................................................................25

*Saenz v. Roe*, 526 U.S. 489 (1999) ..........................................................................29

*Silverstein v. Gwinnett Hosp. Auth.*, 861 F.2d 1560 (11th Cir. 1988)....................24

*Slaughter-House Cases*, 83 U.S. 36 (1872) .............................................................29

**Page(s)**

*Sophocleus v. Ala. Dep't of Transp.*, 605 F. Supp. 2d 1209 (M.D. Ala. 2009),
    *aff'd*, 371 F. App'x 996 (11th Cir. 2010) ....................................................4, 5

*St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013).........................19, 25, 28

*Turner v. Fouche*, 396 U.S. 346 (1970)....................................................................25

*United States v. Armour & Co.*, 402 U.S. 673 (1971) ...............................................7

*United States v. Lopez*, 514 U.S. 549 (1995)...........................................................25

*United States v. Morrison*, 529 U.S. 598 (2000) .....................................................25

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) ..............................................25

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ......................4

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ...........................................25

*Williams v. Vermont*, 472 U.S. 14 (1985)................................................................25

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ..................................................12

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ..................................................12, 15, 17

*Zobel v. Williams*, 457 U.S. 55 (1982)....................................................................25

*Zwickler v. Koota*, 389 U.S. 241 (1967) .................................................................12

**Codes**

42 U.S.C. § 1983 .................................................................................*passim*

## INTRODUCTION

The Defendants' motion demonstrates that they fundamentally misconceive Plaintiff's Complaint and the relief she is seeking.  Plaintiff is a teeth-whitening entrepreneur who was forced to close her business when the Georgia Board of Dentistry (Board) warned her of "potential violations" of its regulations and Georgia's Dental Practice Act, subjecting her to potentially ruinous fines and imprisonment for the felony unlawful practice of dentistry.  In order to avoid being punished for those alleged past violations, Ms. Eck agreed to cease and desist from any act or practice that requires licensure under the Practice Act.

Plaintiff has not launched a collateral attack on the past cease-and-desist order issued against her by the Board.  She is not seeking a declaratory ruling vindicating her for past conduct.  She is not seeking a declaration that the Board's past enforcement actions against her were unconstitutional.  She requests entirely prospective relief, which would make clear whether she may offer teeth-whitening services in the future. She also seeks an injunction that will prohibit the Government from initiating *future* enforcement proceedings against her for offering teeth whitening services insofar as this Court determines she has a constitutional right to do so.

Moreover, this case is not an attack on Georgia's legitimate authority to protect public health by regulating the practice of dentistry.  In fact, this case has nothing to do with public health or safety.  Plaintiff has alleged facts sufficient to demonstrate that teeth-whitening is extremely safe and that this particular application of Georgia's law is really about protecting licensed dentists from honest competition by non-dentist entrepreneurs.  Under the Fourteenth Amendment, that is not a legitimate use of government power.

The Government has moved to dismiss Plaintiff's Complaint on the grounds that: (1) this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (2) Plaintiff's claims are barred by principles of *res judicata*; (3) the Court should abstain from deciding the constitutional issues raised pursuant to either the *Burford* or *Younger* abstention doctrines; (4) neither declaratory nor injunctive relief are available against the Board under 42 U.S.C. § 1983; and finally, (5) the Complaint fails to state a claim.

As demonstrated below—with the exception of the Defendants' argument that Plaintiff has failed to state a claim under the Privileges or Immunities Clause of the Fourteenth Amendment[1]—none of the Government's arguments have merit.

---

[1] As explained at page 29, *infra*, Plaintiff recognizes that this claim is barred by current Supreme Court precedent.  Plaintiff raises it purely to preserve it for future appellate review.

## ARGUMENT AND CITATION OF AUTHORITY

## I. THE *ROOKER-FELDMAN* DOCTRINE HAS NO APPLICATION TO THIS CASE.

The Government argues that "[t]his Court lacks jurisdiction" to hear this case "under the *Rooker-Feldman* doctrine." Defs.' Mot. at 10. But the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by *state-court losers* complaining of injuries caused by *state-court judgments*." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005) (emphases added).

Plaintiff is neither a state-court loser, nor is she complaining of injuries caused by a state-court judgment; accordingly, the *Rooker-Feldman* doctrine has no application to this case. Instead, Plaintiff is someone who consented to a voluntary cease-and-desist order—*a settlement*—with the Board, which is not a court but an *administrative agency*. That order was then issued *by the agency, not a court*. *See* Doc.1, Ex. B. Moreover, Ms. Eck's injuries stem not from the past settlement, but from the Board's future unconstitutional enforcement of the Practice Act.

These facts are dispositive, because the Supreme Court has expressly rejected the application of the *Rooker-Feldman* doctrine to cases against state administrative agencies such as the Board. *See Lance v. Dennis*, 546 U.S. 459, 464

3

(2006) (noting the "narrowness of the *Rooker-Feldman* rule," which "has no application to review of executive action, including determinations made by a state administrative agency") (*citing and quoting Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 n. 3 (2002)).  Indeed, the Court made clear in *Exxon Mobil* that the doctrine does not extend "beyond the contours of the *Rooker* and *Feldman* cases," *Exxon Mobil*, 544 U.S. at 283, in which losing parties in state court "filed suit in federal court after the state proceedings ended, complaining of an injury *caused by* the state-court judgment and *seeking review and rejection* of that judgment." *Id.* at 291 (emphases added).

Perhaps not surprisingly, all of the cases cited by the Government in support of its argument were decided prior to *Exxon Mobil*, apart from its citation to *Exxon Mobil* itself.  But these cases cannot be squared with current Eleventh Circuit precedent, which, since the *Exxon Mobil* decision, has applied the Supreme Court's "strict language confining the doctrine to cases brought by state-court losers complaining of injuries caused by state-court judgments." *Cormier v. Horkan*, 397 F. App'x 550, 552 (11th Cir. 2010) (quotation omitted).  Further, district courts within the Eleventh Circuit have recognized that the Circuit's prior, more expansive application of *Rooker-Feldman* was "rejected by the [Supreme] Court in

4

*Exxon*." *See, e.g., Sophocleus v. Ala. Dep't of Transp*., 605 F. Supp. 2d 1209, 1214

(M.D. Ala. 2009) *aff'd,* 371 F. App'x 996 (11th Cir. 2010).

The Government's reliance on *Alyshah Immigration Agency, Inc., et al. v.
State Bar of Georgia,* No. 1:04-CV-1017-TWT, 2005 U.S. Dist. LEXIS 43624
(N.D. Ga. Mar. 11, 2005), is illustrative of its failure to take *Exxon Mobil* into
account.  In *Alyshah*, the Georgia State Bar initiated a state court action against an
individual who was practicing law without a license. The parties resolved the
matter by consent order issued by the state court permanently prohibiting the
firm's principal, Mahmood Alyshah, from practicing law in the state.  When Mr.
Alyshah subsequently brought suit against the State Bar to challenge the
constitutionality of the state court's order, the Court dismissed the action for lack
of jurisdiction on the basis of the *Rooker-Feldman* doctrine.  The important
difference between that case and the present one is that Mr. Alyshah, unlike Ms.
Eck, was a *state-court loser* complaining of an injury caused by a *state-court
judgment*—the exact narrow circumstance in which the Supreme Court has said the
*Rooker-Feldman* doctrine applies.

Ms. Eck is neither a state-court loser nor is she challenging a state-court
judgment.  According to Supreme Court and Eleventh Circuit precedent, the

*Rooker-Feldman* doctrine has no application here and is no basis to dismiss Plaintiff's complaint.

## II.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF *RES JUDICATA*.

The Government next argues that Ms. Eck's federal constitutional claims are barred by *res judicata*.  This argument fails for three reasons.  First, Eleventh Circuit and Supreme Court precedent makes clear that when a prior action is resolved by consent order, as Ms. Eck's administrative proceeding was, *res judicata* applies only against claims expressly included in the written terms of that order.  But Ms. Eck's constitutional claims are not encompassed by the order she signed with the Board.  Second, *res judicata* does not apply because there is no identity of claims and because Ms. Eck has not had a full and fair opportunity to resolve her constitutional claims; indeed, Ms. Eck could not have had her constitutional claims resolved because administrative agencies in Georgia are not empowered to declare statutes unconstitutional.  Finally, what the Board is really attempting to do with its *res judicata* argument is impose an administrative exhaustion requirement on Ms. Eck's claims, whereas it is firmly established that Plaintiff's may bring § 1983 claims in federal court without first exhausting possible administrative or state law remedies.

**A.** ***Res Judicata* Does Not Apply Because Ms. Eck's Controversy with the Board Was Settled by a Consent Order, and That Order Does Not Encompass Her Constitutional Claims.**

This Circuit holds that where parties resolve a controversy by settlement or consent order, traditional principles of *res judicata* do not apply. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288, 1291 (11th Cir. 2004). Instead, the specific terms of the order or settlement agreement determine what claims may be the subject of future litigation. *Id.* (*citing United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). The only claims that are barred from future litigation are "claims which may be properly encompassed by the language of the consent order." *Alyshah Immigration Agency, Inc., et al. v. State Bar of Georgia,* No. 1:04-CV-1017-TWT, 2005 U.S. Dist. LEXIS 43624, *6-7 (N.D. Ga. Mar. 11, 2005).

The previous matter between the Board and Ms. Eck was resolved by a consent order. Plaintiff received an investigative subpoena demanding production of her business records, Doc. 1., Ex. C, and was alerted by the Board to potential statutory violations of the Practice Act and possible punishments. In order to avoid the risk that she would be seriously punished by the Board, she settled the matter by signing a consent cease-and-desist order that was then issued by the Board. The entire relevant portion of that agreement states:

> Potential violations of [the Dental Practice Act] have been called to [Plaintiff's] attention. [Plaintiff] has consented to this Order and agrees to voluntarily cease and desist from any act or practice that requires licensure under [the Dental Practice Act], until such time as [Plaintiff] becomes properly licensed by the Board [as a dentist].
>
> [Plaintiff] freely, knowingly and voluntarily waives the right to a hearing in this matter.
> …
> The Order shall remain in effect until such time as [Plaintiff] is properly licensed with the Board, or until further order. [Plaintiff] understands this Order is a public record and evidence of the final disposition of any proceedings presently before the Board.

Doc. 1, Ex. B.

The meaning of the consent order—and what claims it precludes—must be determined "according to traditional principles of contract law," rather than *res judicata*. *Norfolk S. Corp*., 371 F.3d at 1289. To the extent there is any ambiguity as to what claims are or are not encompassed by the order, it should be "resolved most strongly against the drafter," *Georgia State Fin. & Inv. Comm'n v. XL Specialty Ins. Co.,* 694 S.E.2d 193, 196 (Ga. App. 2010), which in this case is the Board.

A reasonable construction of the consent order cannot support the conclusion that by discharging liability for past "potential violations" of the Practice Act, Ms. Eck was waiving her rights to prospective relief under § 1983

concerning constitutional questions that were not then at issue before the Board.

By its plain terms, the "matter" resolved by the consent order pertained to the

Board's warning of past potential violations of the Practice Act; the order was

clearly a "final disposition" of that matter.   But nothing in the order states that the

Board's prohibition on teeth-whitening services is constitutional.  Indeed, the order

contains no language about teeth whitening at all.  Nothing in the cease-and-desist

order suggests that prospective federal constitutional questions about the right to

earn a living were encompassed by it, and Ms. Eck would not have agreed to it if

they had been.

 Moreover, resolving Plaintiff's constitutional claims will leave the consent

order totally undisturbed.  Ms. Eck agreed that she would abstain from "any act or

practice that requires licensure."  She is asking this Court to declare that the state

of Georgia cannot constitutionally require her to have a license in order to resume

offering her teeth-whitening services.  If she is successful and the Practice Act is

declared unconstitutional as applied to her teeth-whitening services, then such

services will not require licensure, and Ms. Eck can offer them while remaining in

full compliance with the consent order.

 Accordingly, Ms. Eck's constitutional claims are not encompassed by the

consent order and are therefore not barred by *res judicata*.

**B.** *Res Judicata* **Does Not Apply Because There Is No Identity of Claims, and Ms. Eck Had No Full and Fair Opportunity to Litigate Her Constitutional Claims.**

Besides falling outside the scope of the consent order, Ms. Eck's claims are not barred because the government has not demonstrated the three required factors for *res judicata*. *Res judicata* applies where: (1) there is a final adjudication on the merits by a court; (2) the prior and subsequent actions have an identity of parties and claims; and (3) the party against whom the doctrine of *res judicata* is raised has had a full and fair opportunity to litigate the issues. *See Dep't of Transp. v. Revco Disc. Drug Ctr., Inc.*, 746 S.E.2d 631, 633 (Ga. App. 2013). The government's argument fails the second and third prongs of this test; this case raises different claims than those resolved by the consent order and Plaintiff had no opportunity to have her constitutional claims fully resolved by the Board, nor could the Board have resolved them.[2]

---

[2] The government's argument also potentially fails prong one. The Government cites *Blackwell v. Georgia Real Estate Commission*, 421 S.E. 2d 716 (Ga. App. 1992), and other cases for the proposition that Georgia law bars the "re-litigation of claims previously determined by an administrative agency." Defs.' Mot. at 13. But those cases actually stand for the proposition that "questions of *fact* once ruled upon by an administrative body" are precluded from re-litigation. *Blackwell*, 421 S.E. 2d at 717 (citations omitted) (emphasis added). Ms. Eck is not seeking to re-litigate the consent order or to dispute any facts determined by the Board. Indeed, no findings of fact are included in the order.

10

First, as explained on page 9 above, there is not an identity of claims between this action and the earlier matter before the Board.  The prior proceeding resolved Ms. Eck's past "potential violations" of the Practice Act.  The consent order was a "final disposition of any proceedings [then] before the Board."  *Id.* Ms. Eck is now raising a claim nowhere addressed in the past proceeding, and seeking relief that is entirely prospective: namely, a determination that teeth whitening of the type she hopes to offer in the future cannot be constitutionally prohibited by the Board.  The administrative proceeding disposed of her past liability for a discrete set of past acts; the present proceeding seeks a declaration about her constitutional rights to provide teeth whitening services in the future. There is no identity of the causes of action between the two proceedings.

Second, under Georgia law, Ms. Eck could not have challenged the constitutionality of the Practice Act before the Board.  The Georgia Supreme Court has determined that "where the constitutional validity of a statute is challenged before an administrative hearing officer or board, such officer or board is powerless to declare the Act unconstitutional."  *Flint River Mills v. Henry,* 216 S.E.2d 895, 896-97 (Ga. 1975).  Therefore, even if Ms. Eck's claims were deemed to overlap between this action and the prior proceeding, the administrative process did not provide and could not have provided a full and fair opportunity to litigate

11

her federal constitutional issues.  Accordingly, her constitutional claims for

prospective relief are not barred by *res judicata*.

### C.      The Government Is Attempting to Impose an Improper Administrative Exhaustion Requirement on § 1983 Actions.

Although the Government's argument is framed in terms of *res judicata*—

which, for the reasons discussed above, does not apply to Plaintiff's claims—the

consequence of its argument is to impose upon Plaintiff a requirement to exhaust

administrative (and even state judicial) remedies, if such are available, prior to

bringing a §1983 claim in this Court.  But the Supreme Court has stated

"categorically that exhaustion is not a prerequisite to an action under § 1983."

*Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 501 (1982).  It has

"uniformly held that individuals seeking relief under 42 U.S.C. § 1983 need not

present their federal constitutional claims in state court before coming to a federal

forum."  *Zablocki v. Rehail*, 434 U.S. 374, 381 n.5 (1978) (citing *Wisconsin v.

Constantineau*, 400 U.S. 433, 437-439 (1971); *Zwickler v. Koota*, 389 U.S. 241,

245-252 (1967);  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 (1975)).  The

Eleventh Circuit has followed suit, recognizing "the purpose Congress had in

adopting Section 1983: to provide an alternate, *supplemental* avenue for relief to

persons who almost always have an additional available remedy at state law."

*Alacare, Inc.-N. v. Baggiano*, 785 F.2d 963, 967 (11th Cir. 1986) (emphasis in

original); *see also Moore v. Bonner*, 695 F.2d 799, 801 (4th Cir. 1982) ("The choice of whether to proceed in a state or federal forum . . . necessarily belongs to the plaintiffs and they cannot be deprived of it by a state rule which gives preclusive effect to unappealed state administrative decisions.").

The Supreme Court and this Circuit have made clear that a state cannot require Plaintiff to exhaust administrative remedies before bringing her federal constitutional claims to this Court, and there is nothing in the doctrine of *res judicata* that provides otherwise.  Ms. Eck's has chosen to proceed in federal court, and her claims are not barred.

## III.   NEITHER THE *BURFORD* NOR *YOUNGER* DOCTRINES JUSTIFY THE COURT'S ABSTENTION.

The Government also argues that this Court should abstain from hearing this case under either *Burford* or *Younger* abstention.  Defs.' Mot at 14.  But abstention doctrines are "extraordinary and narrow exception[s] to the duty of a district court to adjudicate a controversy before it," and "a district court should not lightly shirk its virtually unflagging obligation to exercise" its jurisdiction.  *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1251(11th Cir. 2009) (citations and quotations omitted).  As explained below, the Government has provided no basis for abstaining here.

## A.  *Burford* Abstention.

"The purpose of *Burford* abstention is to protect[] complex state administrative processes from undue federal interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (citation and quotation omitted). The Government argues that abstention is called for because a ruling by this Court would allegedly disrupt Georgia's "comprehensive scheme to regulate the practice of dentistry."  Defs.' Mot. at 15.  This claim, however, overstates the complexity of the state's regulations and ignores precedent from this Circuit holding *Burford* abstention inapplicable in another case involving the regulation of dentistry.

First, this case raises none of the concerns that gave rise to the *Burford* doctrine, which arose out of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  In that case, an oil company filed an action in federal court to enjoin the enforcement of an order against it by the Texas Railroad Commission.  *Id*. at 317.  Similar actions had brought federal courts in Texas into a repeated series of conflicts with Texas state courts over quintessentially local issues concerning oil and gas law.  The Supreme Court determined that the lower courts should use their equitable discretion to decline jurisdiction when they are presented with difficult questions of state law that threaten to bring state policy into disarray, and where "important constitutional issues have . . . been fairly well settled."  *Id*. at 328.

14

Ms. Eck's case is simply not comparable.  Ms. Eck seeks a declaration that the Practice Act and associated Board regulations may not be constitutionally applied to teeth-whitening.  She also seeks an injunction preventing prosecution if she offers teeth-whitening services in the future.  A judgment in her favor would merely restrain the state from applying the Practice Act to teeth whitening, a practice that is not even mentioned in the text of the law.  Declaring the Board's interpretation of the Practice Act unconstitutional as to teeth whiteners would have no effect on the state's "comprehensive scheme to regulate the practice of dentistry" beyond teeth whitening.  Moreover, there is "no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."  *Zablocki*, 434 U.S. 374 at 380.

Indeed, the Eleventh Circuit reached precisely that conclusion in a case involving the Florida Board of Dentistry.  In *Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991), a dentist alleged a policy of selective enforcement of the Florida Board's disciplinary statutes, claiming that the Board disproportionately pursued dentists who advertised as compared to non-advertising dentists.  *Id.* at 1553-54. The lower court abstained on the basis of *Burford* because "Florida has a significant interest in regulating the competency of dentists" and "review by federal courts in this area could have a disruptive effect."  *Rindley v. Gallagher*,

15

719 F. Supp. 1076, 1080-81 (S.D. Fla. 1989), *rev'd* 929 F.2d at 1552 (11th Cir. 1991). In reversing, the Eleventh Circuit concluded that invalidating a portion of the dental practice laws as unconstitutional would "be no more disruptive than in any case where a federal district court declares a state statute unconstitutional." *Rindley*, 929 F.2d at 1557. *Accord BT Inv. Managers v. Lewis*, 559 F.2d 950, 955 (5th Cir. 1977) (holding that *Burford* abstention was inappropriate where "[a]lthough the challenged statutes are part of a large and perhaps complex regulatory scheme, i.e., the Florida Banking Code . . . appellants focus[ed] their attack upon a single statute whose possible invalidation could scarcely be expected to disrupt Florida's entire system of banking regulation").

In this case, like in *Rindley*, Ms. Eck seeks a modest ruling that one portion of the Practice Act, as applied solely to non-dentists providing a particular teeth-whitening service, is unconstitutional. A ruling in her favor would not even have the effect of invalidating any Georgia statute or regulation, but only a particular application. For the foregoing reasons, *Burford* abstention is inappropriate in the present case.

**B.    *Younger* Abstention.**

Like the *Burford* doctrine, *Younger* abstention is a narrow exception to the virtually unflagging obligation of a federal district court to exercise its jurisdiction.

16

A district court may only abstain under *Younger* if three factors are met: (1) there must be an ongoing or pending state proceeding; (2) the state proceeding must implicate important state interests; and (3) the state proceeding must provide plaintiff an adequate opportunity to raise her federal constitutional questions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1215-1216 (11th Cir. 2002).

The Government's *Younger* argument fails because there is no ongoing state proceeding. The text of the cease-and-desist order agreed to by the Board and Ms. Eck makes this an easy conclusion: It says plainly that "this Order is . . . the *final disposition* of *any proceedings* presently before the Board." Docket No. 1, Ex. B (emphasis added). Because there is no pending or ongoing state proceeding, *Younger* does not apply. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. at 380 (holding *Younger* inapplicable in a case where "there was no pending state-court proceeding that could be frustrated by the declaratory and injunctive relief requested.").

The Government seems to believe that *Younger* applies because its cease-and-desist order says it "shall remain in effect until such time as [Plaintiff] is licensed with the board, or until further order." According to the Board, it therefore "retains jurisdiction" such that the earlier administrative proceeding is

17

never really over.  Defs.' Mot. 17.  But this cannot be right, both because the terms of the order state that it is the final disposition of the proceedings before the Board, foreclosing *Younger*, and because, if true, no order from the Board would ever truly be final as long as the Board included within it those magic words.  That is not the law—*Younger* simply does not apply unless there is an ongoing or pending state proceeding, *see, e.g., For Your Eyes Alone,* 281 F.3d at 1217, and there is no such proceeding in this case.

## IV.   DECLARATORY AND INJUNCTIVE RELIEF ARE AVAILABLE REMEDIES IN THIS CASE.

The Government next seizes on language in § 1983 ("injunctive relief shall not be granted" against a "judicial officer" unless a "declaratory decree was violated") to argue that officials of the Board are immune from § 1983 claims seeking injunctive relief.  Defs.' Mot. at 18.  It also claims that declaratory relief is unavailable under § 1983 because "the state provided an adequate remedy at law which Plaintiff failed to pursue."  *Id.* at 20.  Both of these assertions are wrong, and the cases cited by the Government are inapposite.

Injunctive and declaratory relief are available in this case just they are available in every § 1983 case against state administrative officials whose actions violate constitutional rights of the individuals bringing an action.  Suing state

administrative officials in their official capacity is the normal way of seeking prospective injunctive and declaratory relief against state agencies in federal court under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 166-168 & n. 14 (1985) (noting that official-capacity actions for prospective relief are the means of challenging the implementation of an unconstitutional state policy) (citing *Ex parte Young*, 209 U.S. 123 (1908)). The Federal Reports are filled with such cases. *See, e.g.*, *Rindley*, 929 F.2d 1552 (plaintiffs had standing to pursue action for declaratory and injunctive relief against members of the Florida Board of Dentistry in their official capacity); *St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013) (granting declaratory and injunctive relief against members of state funeral directors board in their official capacity). No case prohibits this Court from issuing prospective injunctive or declaratory against the Board.

The Board's erroneous belief that injunctive relief is not available in this case stems from the facts that (1) the Board has misinterpreted cases prohibiting *personal damage suits* against judicial officials as prohibiting injunctive relief against Board members in their *official capacity*; (2) the Board does not recognize that it may be enjoined in its legislative and executive capacities, even if its judicial actions are immune from injunction; and (3) the Board wrongly believes that

19

declaratory relief is not available if Plaintiff has failed to exhaust administrative remedies.

As to the first point, Ms. Eck is not suing anyone for damages in this case, and none of the Defendants are being sued in their personal capacity.  Accordingly, the cases cited by the Government standing for the proposition that judicial officers (including administrative officials who are functionally comparable to judges) are immune from *personal damages suits* under § 1983 are simply not applicable.  *See* Defs.' Mot. at 18 (citing, *inter alia*, *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) (discussing absolute and qualified immunity from damage suits for persons acting in a judicial capacity)).

As to the second point—the Board's argument that § 1983 forecloses injunctive relief against the acts of judicial officers—the Board has misinterpreted *Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000).  Defs.' Mot. at 18.  *Bolin* stands for the proposition that § 1983 does not permit lawsuits against judicial officers designed to frustrate the enforcement of orders issued by those officers.  It is inapplicable because Ms. Eck is not challenging the Board's past order and she is not seeking to enjoin the Board members in their judicial capacity.  She is seeking entirely prospective relief—an injunction to prevent the Board from enforcing

20

unconstitutional applications of the Practice Act—whichs concern only the Board's executive and legislative functions.  *Bolin* and related cases simply do not apply.

Finally, the Board's claim that declaratory relief is not available because Plaintiff could have availed herself of further administrative remedies is simply a rehash of its argument—refuted at pages 12-13 above—that Plaintiff was required to exhaust administrative remedies before filing a lawsuit under § 1983.  That argument has been expressly rejected by the U.S. Supreme Court.  *See Patsy*, 457 U.S. at 501.  Simply put, there are countless § 1983 cases in which plaintiffs like Ms. Eck have received declaratory or injunctive relief, and the Board has cited no cases that call into question the availability of those remedies in this case.

## V.    PLAINTIFF'S COMPLAINT SUFFICIENTLY ALLEGES THAT THE BOARD'S TEETH-WHITING PROHIBITION VIOLATES THE EQUAL PROTECTION, DUE PROCESS, AND PRIVILEGES OR IMMUNITIES CLAUSES.

Finally, the Government argues that Plaintiff's complaint should be dismissed for failure to state a claim.  The proper inquiry in a motion to dismiss for failure to state a claim is straightforward:  The Court must take all the facts in the Complaint as true (and make all reasonable inferences in favor of the Plaintiff) and determine whether the Complaint states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, Plaintiff need only allege facts in support of her plausible claims.  Beyond that, it is inappropriate to reach the

question of whether Plaintiff's success on the merits is probable.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As shown below, Plaintiff has provided more than adequate allegations for her claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  Further, although her Privileges or Immunities claim is foreclosed by Supreme Court precedent, she properly pled that claim to preserve it for review.

### A.    Equal Protection.

Ms. Eck wishes to provide teeth whitening services that consist of selling customers an over-the-counter teeth-whitening product; providing a clean, comfortable environment for customers to use that product; and providing customers with guidance on how to apply that product to their own teeth, just as they would at home.  Compl. ¶¶ 1, 48, 53.  The Board contends these practices constitute the unlicensed—and hence criminal—practice of dentistry.  Ms. Eck has challenged this policy as a violation of the Equal Protection Clause of the Fourteenth Amendment.  In support of this claim, Ms. Eck alleges that:

- Products identical to those sold by her "are available for purchase in supermarkets, drug stores, and online" and that "[i]nstructions for use of those products are widely available, either provided with the products themselves or online."  *Id*. ¶ 64.

- Ms. Eck and other teeth whiteners like her "do not make diagnoses and do not place anything in their customers' mouths."  *Id*. ¶ 17.

- The risks associated with teeth whitening are minimal.  *Id.* ¶ 18.

- "[F]or identical, self-administered products, the risks of teeth whitening are the same whether a person applies them to their own teeth at home, in a salon, or at a shopping mall."  *Id.* ¶ 19.

- There is no rational basis for a "distinction between persons who sell customers a product that they will apply to their own teeth at home . . . and persons who sell customers an identical product that they will apply to their own teeth in a shopping mall or at a salon, whom Georgia considers to be engaged in the practice of dentistry."  *Id.* ¶ 68.

If these facts are taken as true—as they must be at the motion-to-dismiss stage, then Ms. Eck has alleged facts sufficient to demonstrate that Georgia law draws an irrational distinction between those who sell teeth-whitening products for use at home (who are not considered to be practicing dentistry) and those who sell teeth-whitening products for use at a shopping mall or salon (who are considered to be practicing dentistry).

The Government argues that Ms. Eck does not state an equal protection claim because under Georgia law she is permitted to "purchase and self-apply [teeth-whitening] products in her own home," as are other persons in the state. Defs.' Mot. at 22.  The Government argues that the relevant classification is "between trained and licensed dentists, on the one hand, and on the other hand untrained and unlicensed individuals who hold themselves out to the public as capable of providing and in fact provide dental services."  *Id.* at 25.

23

The Government's argument misconstrues Plaintiff's claim.  Plaintiff does not dispute that there are many services that may only be provided by licensed dentists.  But the question posed by the Complaint is whether there is a rational basis for regulating non-dentist teeth whiteners like Ms. Eck while placing no restrictions on individuals who sell teeth-whitening products for use at home, even though both of them sell identical products that the customers themselves apply to their own teeth.  It is that irrational distinction—between those who sell products for use at home and those who sell products for use at the place of purchase—that violates the Equal Protection Clause.

Moreover, it is not necessary, as the Government suggests, that Ms. Eck show that her right to pursue the occupation of her choice free of arbitrary or unreasonable government regulations is a "fundamental right," Defs.' Mot. at 22, before she may raise an equal protection claim.  The Supreme Court has recognized that the Fourteenth Amendment protects the right "to engage in any of the common occupations of life," *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972); *Silverstein v. Gwinnett Hosp. Auth.*, 861 F.2d 1560 (11th Cir. 1988).

Because Plaintiff's liberty interest in earning an honest living in the occupation of her choice is protected by the Fourteenth Amendment, burdens on

that right must, at a minimum, satisfy the rational-basis test.  That standard, while

deferential, is not a rubber stamp; it is a real standard of review under which

Plaintiffs actually prevail when they present evidence to refute the government's

asserted rational bases.[3]  And Plaintiffs must be given the opportunity to adduce

that evidence because, after discovery and trial, it often becomes clear that an

asserted interest in protecting public health and safety is really just a smokescreen

for economic protectionism—an illegitimate use of government power even under

the rational-basis test.  *See, e.g., St. Joseph Abbey v. Castille*, 712 F.3d at 226

(rejecting economic protectionism as a legitimate governmental interest and

holding that the "great deference due state economic regulation does not require

---

[3] Plaintiffs have prevailed in at least 20 of 126 rational-basis cases before the Supreme Court since 1970, a result that would be impossible if government's invocation of magic words, such as a stated goal of regulating in the interest of "public health," were enough to dismiss or reject their claims.  *See, e.g., Lawrence v. Texas*, 539 U.S. 558, 578 (2003); *United States v. Morrison*, 529 U.S. 598, 614-15 (2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000); *Romer v. Evans*, 517 U.S. 620, 634-35 (1996); *United States v. Lopez*, 514 U.S. 549, 567 (1995); *Quinn v. Millsap*, 491 U.S. 95, 108 (1989); *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985); *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 623 (1985); *Williams v. Vermont*, 472 U.S. 14, 24-25 (1985); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985); *Plyler v. Doe*, 457 U.S. 202, 230 (1982); *Zobel v. Williams*, 457 U.S. 55, 64 (1982); *Chappelle v. Greater Baton Rouge Airport Dist.*, 431 U.S. 159 (1977); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *James v. Strange*, 407 U.S. 128, 141-42 (1972); *Lindsey v. Normet*, 405 U.S. 56, 77-78 (1972); *Mayer v. City of Chicago*, 404 U.S. 189, 196 (1971); *Reed v. Reed*, 404 U.S. 71, 76-77 (1971); *Turner v. Fouche*, 396 U.S. 346, 363-64 (1970).

courts to accept nonsensical explanations for regulation"); *Merrifield v. Lockyer*,

547 F.3d 978, 991-92 & n.16 (9th Cir. 2008) (finding no rational basis beyond

protectionism for pest-control rules); *Craigmiles v. Giles*, 312 F.3d 220, 224, 228-

29 (6th Cir. 2002) (finding no rational basis beyond protectionism for casket-sales

regulations); *Cornwell v. Cal. Bd. of Barbering & Cosmetology*, 962 F. Supp.

1260, 1273-74 (S.D. Cal. 1997) (denying motion to dismiss rational-basis

challenge to regulations prohibiting hair-braiding services without cosmetology

license).

Ms. Eck has plausibly alleged facts sufficient to demonstrate that Georgia's

prohibition on teeth-whitening services like hers is irrational.  That was all she was

required to do at this stage of the proceedings and, accordingly, the Board's motion

to dismiss her equal protection claim must fail.

### B.   Due Process.

Besides violating Ms. Eck's rights under the Equal Protection Clause, Ms.

Eck has alleged that Georgia's prohibition on her teeth-whitening services violates

her due process rights because there is no rational basis for requiring non-dentist

teeth whiteners like her to become licensed dentists in order to offer teeth-

whitening services.  The Supreme Court has recognized a due process right to earn

a living free from arbitrary or unreasonable government regulations.  *See, e.g.,*

26

*Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (affirming the "due process right to choose one's field of private employment" subject to "reasonable government regulation").

Ms. Eck's due process claim is supported by the same facts that support her equal protection claim, listed on page 23 above.  In addition to those facts, Ms. Eck has also alleged that:

- The Practice Act and related regulations subject her to serious penalties for offering teeth-whitening services.  Compl. ¶ 24.

- The only way to avoid those penalties is to pursue years of burdensome training at enormous expense.  *Id.* ¶¶ 25-27.

- The required training is not even germane to the government's asserted interested in health and safety, because the Board does not require dentists to have any experience or demonstrated proficiency with regard to teeth whitening.  *Id.* ¶¶ 33-35.

Although the Due Process and Equal Protection Clauses protect different interests, in this case the legal analysis is largely the same because the appropriate standard of review under either clause is rational-basis review.  And, as explained above, Plaintiff has alleged facts sufficient to show that Georgia's policy fails rational-basis review.  Simply put, it is not rational to require a person to have eight years of higher education—none of which actually teaches teeth whitening—before one may offer teeth-whitening services.  Indeed, federal courts have invalidated educational requirements under far less extreme facts.  *See Craigmiles*,

312 F.3d at 224-25 (concluding that it was unconstitutionally irrational to require casket resellers to "dedicate two years and thousands of dollars" to funeral director training when they performed none of the functions of funeral directors beyond selling caskets); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1117-18 (S.D. Cal. 1999) (reaching the same conclusion in case with requirement of 1,600 hours of cosmetology training, only 110 of which were even arguably applicable to promoting health and safety in hair braiding).

For its part, the Government again argues that Ms. Eck fails to state a valid due process claim because the right she has asserted is not "fundamental." The Government seems to assume that, since her challenge to regulations violating her right to earn a living is subject to rational-basis review by this Court, her claim *must* fail. Defs.' Mot. at 27. But that is wrong for the same reasons explained in the preceding discussion of Plaintiff's equal protection claim. See *supra* at p. 25-27. Plaintiffs can and do prevail in rational-basis cases—and they do so under facts similar to those Plaintiff has alleged in this case. *See, e.g.*, *St. Joseph Abbey v. Castille*, 712 F.3d at 226; *Cornwell*, 80 F. Supp. 2d at 1117-18. Accordingly, Plaintiff has pled sufficient facts to state a claim for relief under the Due Process Clause of the Fourteenth Amendment.

**C.     Privileges or Immunities.**

Finally, the Government argues that Plaintiff fails to state a Privileges or Immunities claim either because it is the same "right to earn an honest living" forming the basis of her due process claim or because there is "no federal constitutional right concerning one's occupation."  Defs.' Mot. at 27-28.  This is the Board's only meritorious argument:  Plaintiff admits that the Supreme Court's decision in the *Slaughter-House Cases* forecloses this claim, as it nearly rendered the Privileges or Immunities Clause "a vain and idle enactment."  83 U.S. 36, 96 (1872) (Field, J., dissenting).  However, at least one Supreme Court Justice has expressed interest in revisiting the Privileges or Immunities Clause "in an appropriate case," *see, e.g.*, *Saenz v. Roe*, 526 U.S. 489, 527-28 (1999) (Thomas, J., dissenting), and lower courts have also expressed the desire for the Supreme Court to speak to the matter.  *See., e.g.*, *Craigmiles*, 312 F.3d at 229 (noting "recent speculation that the Privileges or Immunities Clause should have broader meaning").  Accordingly, Plaintiff has pled this claim in order to preserve it for future appellate review, in the hopes that the Privileges or Immunities Clause may one day be revived.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss should be denied except as to Plaintiff's Privileges or Immunities claim.

Dated this 8th day of May, 2014.

Respectfully submitted,

/s/ Lawrence G. Salzman                        /s/ Yasha Heidari
Lawrence G. Salzman*                       Yasha Heidari (GA Bar No. 110325)
Paul Sherman*                            Heidari Power Law Group, LLC
Institute for Justice                        P.O. Box 79217
901 North Glebe Road, Suite 900     Atlanta, GA 30357
Arlington, VA 22203                    Tel: (404) 939-2742
Tel: (703) 682-9320                    Fax: (404) 601-7852
Fax: (703) 682-9321                    Email:  yasha@hplawgroup.com
Email: lsalzman@ij.org;
psherman@ij.org                         *Local Counsel for Plaintiff*
* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D

I certify that the foregoing Brief conforms to the requirements of L.R. 5.1C.

The Brief is prepared in 14 point Times New Roman font.

/s/ Lawrence G. Salzman
Institute for Justice
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of May 2014, a true and correct

copy of the **BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS** was served with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such

filing to the following counsel of record:

ROGER A. CHALMERS
Assistant Attorney General
State Law Department
40 Capitol Square SW
Atlanta, GA 30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

I further certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants: NONE.

/s/ Lawrence G. Salzman
Institute for Justice
*Counsel for Plaintiff*
