**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| TRISHA ECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:14-CV-00962-MHS |
| TANJA D. BATTLE, in her official | ) | |
| capacity as Executive Director of the | ) | |
| Georgia Board of Dentistry, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, through counsel, Samuel S. Olens, Attorney General for the

State of Georgia, submit this reply in support of their Motion to Dismiss.

In an effort to avoid the clear bars to her claims that are identified in

Defendants' motion, Plaintiff's response adopts several untenable positions.  The

response insists that the Board's Cease and Desist Order is a completed

enforcement action regarding a discrete set of entirely past acts.  If this is true, then

there is not even an alleged continuing violation of federal law that would serve as

a basis for this action under *Ex Parte Young*.

The response also contends *res judicata* does not bar Plaintiff's claims

because (1) the Cease and Desist Order did not encompass her constitutional

claims and (2) the relief sought would not be inconsistent with the dictates of the Order.  This argument lacks merit.  On the first point, just as the consent order instructing the plaintiff not to practice law in *Alyshah* encompassed and barred his later constitutional claims challenging the basis for that restriction, so the Board's Order instructing Plaintiff not to practice dentistry encompasses and bars her constitutional claims challenging the basis for that restriction.  There is no difference in the scope of the orders entered in the two cases, and the outcomes should be the same.  On the second point, by this action Plaintiff obviously seeks a Court order allowing her to do what the Board's Order forbids -- provide teeth-whitening services although she is not licensed to provide dental services as required by Georgia law.

The response also fails to address the central shortcoming of the equal protection and due process claims in this case: that is, that Plaintiff and her teeth-whitening business are not treated differently at all and instead the same restrictions that apply to all persons who would provide dental *services* in Georgia have been applied to her business which admittedly provides dental *services*.  Plaintiff insists on likening her situation to the mere sale of teeth-whitening products, but it is clear from the complaint that this is not what her business is about.  Georgia has a legitimate interest in regulating dental services to protect the

public health.  The response side-steps this important point and in doing so it fails to show that a claim is stated.

### A. This Court Lacks Subject Matter Jurisdiction Over The Claims Asserted Under The *Rooker-Feldman* Doctrine

Defendants' motion showed that under the *Rooker-Feldman* doctrine this Court lacks subject matter jurisdiction over the claims asserted.  Citing *Lance v. Dennis*, 546 U.S. 459 (2006), the response argues that the Supreme Court "expressly rejected the application of the *Rooker-Feldman* doctrine to cases against state administrative agencies such as the Board."  (Doc. 30-1 at pp. 3-4).  This argument is incorrect.

Initially, both *Exxon Mobile* and *Feldman* make clear that the "crucial question" is whether the proceedings at issue are "judicial in nature."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 285 (2005) (citing *District of Columbia v. Feldman*, 460 U.S. 462, 476 (1983)).  *Feldman* involved a deciding body (the District of Columbia Court of Appeals) that acted in both an administrative or legislative capacity (promulgating a bar admission rule) and also in a judicial capacity (applying the rule to the plaintiffs).  460 U.S. at 479-482, 485-486.  The Court said that, as to acts taken in a judicial capacity, the federal district court lacked subject matter jurisdiction to hear a later constitutional challenge because appellate review would lie only in the Supreme Court.  *See id.* at

482.  The Court also said that, while a challenge to the constitutionality of the state bar rule could be brought in federal district court, this would be allowed only "so long as plaintiffs did not seek review of the Rule's application in a particular case." *Id.* at 486; *Exxon Mobile*, 544 U.S. at 285-286.[1]

Therefore, *Feldman* discredits the response assertion that *Rooker-Feldman* does not apply simply because the Board is an "administrative body."  Rather, the crucial question is whether the act in question (entry of the Cease and Desist Order which prohibits Plaintiff and her business from providing teeth-whitening services) was judicial in nature.  Defendants' motion shows that it was.  And this result is consistent with *Feldman* and *Exxon Mobile*.  *See Exxon Mobile*, 544 U.S. at 285 ("In applying the accreditation Rule to the Hickey and Feldman waiver petitions, this Court determined, the D. C. court had acted judicially. [ ].  As to that adjudication, *Feldman* held, this Court alone among federal courts had review authority.") (internal citation omitted).  Likewise, here the Cease and Desist Order is an application of the Dental Practice Act to Plaintiff's teeth-whitening service. Review in this Court is barred by *Rooker-Feldman*.

The quotation in the response from *Lance* is taken out of context.  That language originated in *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S.

---

[1] Even as to such claims, "[t]he Court left open the question whether the doctrine of res judicata foreclosed litigation . . . ."  *Exxon Mobile*, 544 U.S. at 287.

635 (2002), where the Court considered *executive* action by a state agency: specifically, review and interpretation by the Maryland Public Service Commission of interconnection and reciprocal compensation arrangements under the Telecommunications Act.  *See id.* at 638-639.  In the decision there is no characterization of the actions taken by the Maryland PSC as judicial in nature, and instead the Court said in a footnote with respect to whether *Rooker-Feldman* would bar a challenge to the agency action: "The doctrine has no application to judicial review of *executive* action, including determinations made by a state administrative agency."  *Id.* at 644, n. 3 (emphasis added).

Because under *Exxon Mobile* and *Feldman* the crucial question is whether the acts in question are judicial in nature, the language from *Verizon Md. Inc.* cannot be read to preclude the application of *Rooker-Feldman* where agency action is judicial in nature.  *See Feldman*, 460 U.S. at 477 (stating the "nature of a proceeding 'depends not upon the character of the body but upon the character of the proceedings.'") (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)); *and see also Mitchell v. Fishbein*, 377 F.3d 157, 166 (2nd Cir. 2004) ("The *Verizon-Maryland* principle, *i.e.*, that *Rooker-Feldman* does not preclude district court review of 'executive … determinations made by a state administrative agency,' 535 U.S. at 644 n.3, may not extend to agencies that are appropriately

characterized as arms of the state judiciary *qua* judiciary, either because they exercise powers that are inherent to the judiciary, or because the state has provided mechanisms for judicial review of their determinations that distinguish those determinations from other types of state administrative action.").

In sum, Plaintiff's argument that *Rooker-Feldman* is inapplicable in all cases involving a state agency or state administrative body is incorrect as a matter of law. As shown in Defendants' motion, and just as this Court held in *Alyshah Immigration Agency, Inc. v. State Bar of Georgia*, 2005 U.S. Dist. LEXIS 43624, *4-5 (N.D. Ga. Mar. 11, 2005) (Thrash, J.), the pre-requisites for *Rooker-Feldman* are present and this Court lacks subject matter jurisdiction over the claims asserted.[2]

---

[2] This Court held in *Alyshah* that the plaintiff, who entered into a consent order prohibiting his unlicensed practice of law, "had, but did not utilize, ample opportunity to raise constitutional claims in the state court proceedings." 2005 U.S. Dist. LEXIS 43624, *4. A separate section of the response argues Plaintiff could not have raised her constitutional challenges in the state proceeding, and in any event the Board could not declare a state statute unconstitutional. This argument fails on two levels because Georgia law (1) expressly allows constitutional challenges to actions taken by the Board, *see* O.C.G.A. § 50-13-19(h)(1); and (2) provides for a full evidentiary hearing on contested matters followed by judicial review of the Board's actions in the Georgia trial and appellate courts. *See* O.C.G.A. §§ 50-13-13, 50-13-19, 50-13-20.

**B. Plaintiff's Claims Are Barred By *Res Judicata***

As stated in *Exxon Mobile*, even if *Rooker-Feldman* does not stand as a jurisdictional bar to Plaintiff's claims, then disposition of this action still is "governed by preclusion law." 544 U.S. at 293. Plaintiff's arguments regarding the bar of *res judicata* lack merit.

The response argues that, when a prior action is resolved by consent order, then "*res judicata* applies only against claims expressly included in the written terms of that order." (Doc. 30-1 at p. 13). But the consent order in *Alyshah*[3] refutes this argument because there were no "claims expressly included" in it. Again in *Alyshah*, in addition to its finding that the asserted constitutional claims were barred by *Rooker-Feldman*, this Court held that *res judicata* bars "claims which may properly be encompassed by the language of the consent order." 2005 U.S. Dist. LEXIS 43624, *6-7. And the Court held that the consent order instructing the plaintiff not to practice law encompassed and barred his later constitutional claims that challenged the basis for that restriction. *See id.*, *8. So here the Board's Order instructing Plaintiff not to practice dentistry encompasses and bars her constitutional claims that challenge the basis for that restriction.

---

[3] *See* Exhibit A. The Court may take judicial notice of this court record. *See U.S. v. Jones*, 29 F.3d 1549, 1553-1554 (11th Cir. 1994); *Barber v. Rubin Lublin*, LLC, 2013 U.S. Dist. LEXIS 179847, *10-11 (N.D. Ga. Nov. 19, 2013) (Baverman, M.J.).

There is no difference in the scope of the orders entered in the two cases, and the outcomes should be the same.

Next the response argues *res judicata* does not apply "because there is no identity of claims and because Ms. Eck has not had a full and fair opportunity to resolve her constitutional claims; indeed, Ms. Eck could not have had her constitutional claims resolved because administrative agencies in Georgia are not empowered to declare statutes unconstitutional."  (Doc. 30-1 at p. 13).  This argument also fails.  Just like in *Alyshah* there is identity of claims: Plaintiff asserts constitutional challenges to the Board's restrictions, the same challenges that she could have asserted (but did not assert) in the state proceedings.  As to whether she had an opportunity to pursue the claims in the state proceedings, the Georgia APA expressly allows constitutional challenges to actions taken by the Board, *see* O.C.G.A. § 50-13-19(h)(1); and provides for a full evidentiary hearing on contested matters followed by judicial review in Georgia trial and appellate courts. *See* O.C.G.A. §§ 50-13-13, 50-13-19, 50-13-20.  Georgia cases, including *Flint River Mills* cited in the response, reject the futility argument based on this availability of judicial review.  *See Flint River Mills v. Henry*, 234 Ga. 385, 386-387, 216 S.E.2d 895, 897 (1975).

Last the response argues *res judicata* does not apply in actions brought under section 1983 because that would be inconsistent with the rule that exhaustion of administrative remedies is not required for such actions.  But the law is settled that a section 1983 claim may be barred by *res judicata*.  *See, e.g., Jones v. Gann*, 703 F.2d 513, 515-516 (11th Cir. 1983); *accord Collins v. Fulton County Sch. Dist.*, 2013 U.S. Dist. LEXIS 46388, *12 (N.D. Ga. Feb. 27, 2013) (Evans, J.).

## C. The Court Should Abstain From Deciding The Constitutional Questions In This Case Under The *Burford* And *Younger* Abstention Doctrines

The response argues that this action "raises none of the concerns" underlying *Burford* abstention and "[a] judgment in Plaintiff's favor would merely restrain the state from applying the [Dental] Practice Act to teeth whitening, a practice that is not even mentioned in the text of the law."  It also suggests that *Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991), is on all fours and counsels against *Burford* abstention in this case.  These arguments miss their mark.

As detailed in Defendants' motion (Doc. 26-1 at pp. 5-8), Georgia has enacted a comprehensive scheme to regulate the practice of dentistry.  The Dental Practice Act includes provisions that define the practice of dentistry, delineate the acts which constitute the practice of dentistry, provide for licensing and licensing review procedures, and provide a mechanism for prohibiting the unlicensed practice of dentistry within the State.  *See* O.C.G.A. §§ 43-11-1, *et seq.*  The Board

is created as part of the Act, and is authorized, *inter alia*, to adopt rules and regulations pertaining to the practice of dentistry, and to initiate investigations, conduct hearings and issue cease and desist orders to stop the unlicensed practice of dentistry. *See* O.C.G.A. § 43-11-7. This comprehensive scheme was created for the expressly stated purpose of protecting the "public health, safety, and welfare." *See* O.C.G.A. § 43-11-2(e).

*Rindley* does not help Plaintiff's case. There an "advertising dentist" claimed "non-advertising dentists" conspired with the Florida Department of Professional Regulation to implement a policy of selective enforcement of the disciplinary statutes regulating the practice of dentistry. 929 F.2d at 1553. The case raised no question concerning the constitutionality of any substantive part of the state regime, and in particular it did not ask the federal court to say what did or what did not constitute the practice of dentistry. *See id.* at 1555 (stating "Rindley does not question the constitutionality of Florida's statutes, but rather their selective enforcement"). The Eleventh Circuit held *Burford* abstention was not appropriate because Florida's ability to regulate dental professionals would not be seriously affected by a determination that its selective enforcement procedures were unconstitutional. *See id.* at 1556-1557.

Unlike *Rindley*, Plaintiff asks this Court to define the practice of dentistry –
a function that should be left to the State and the democratic process – in such a
way as to permit admittedly untrained and non-licensed individuals to provide
dental services to citizens of the State.  That teeth-whitening is not mentioned in
the text of the Act is immaterial.  The same can be said of the terms "root canal"
and "bridge" and "extraction" whereas no one would seriously contend the Board
cannot act in respect of such services.  The State legislature created the Board for
the purpose of interpreting and giving meaning to the law and applying it to real
world "procedures, operations, or services."  *See* O.C.G.A. § 43-11-17.  In this
context *Rindley* supports *Burford* abstention:

> Burford abstention is appropriate when 'exercise of
> federal review of the question in a case and in similar
> cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial
> public concern.'

*Rindley*, 929 F.2d at 1556 (citing *Burford* and *Colo. River Water Conservation
Dist. v. U.S.*, 424 U.S. 800, 814 (1976)).  The definition of "dentistry" and the
"practice of dentistry" under Georgia law should not be developed and determined
on an *ad hoc* case-by-case basis in the federal courts.  *Burford* abstention is proper
in this case.

Regarding *Younger* abstention, the response argues only that there is no ongoing state proceeding.  But again the Cease and Desist Order plainly states that it shall "remain in effect until such time as [Plaintiff] is properly licensed with the Board, or until further order."  (Doc. 1-2).  Clearly the restriction is continuing in nature or else Plaintiff would have no basis for an action under *Ex Parte Young*.  Moreover, as a practical matter, Georgia law requires initiation of further proceedings to address violations of the Order.  *See* O.C.G.A. § 43-1-20.1 ("The violation of any cease and desist order of a professional licensing board issued under subsection (a) of this Code section shall subject the person violating the order to further proceedings before the board . . . .").  Finally, *31 Foster Children* makes clear that the ongoing proceeding requirement is not as rigid as the response suggests:

> The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required.  In *O'Shea*, the Supreme Court held that abstention was required where an injunction would have "indirectly accomplish[ed] the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent."  [ ].  The plaintiffs in *O'Shea* did not seek to enjoin directly any pending prosecutions but apparently did seek a federal court injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials.

*31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) (internal

citations omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499-502 (1974)).

For these reasons *Burford* and *Younger* abstention are proper in this case.

**D. Plaintiff Is Not Entitled To Injunctive Or Declaratory Relief**

Defendants' motion shows that, under the plain limiting language of section

1983, injunctive relief is not available in this case where Plaintiff challenges

judicial acts.  (Doc. 26-1 at p. 18).  The response cuts down a series of straw man

arguments but never addresses the statutory limitation.  Defendants have not made

"personal damage suit" or "exhaustion of administrative remedies" type

arguments; and this action does not involve "legislative or executive" functions.

Instead this case seeks to overturn and enjoin the operation of the Board's Cease

and Desist Order that was clearly entered in its judicial capacity.

Again, the functional approach that is applied in immunity decisions, *see*

*Cleavinger v. Saxner*, 474 U.S. 193, 200-202 (1985); *Hart v. Hodges*, 587 F.3d

1288, 1294-1295 (11th Cir. 2009), also should be applied when considering the

section 1983 limitation on injunctive relief.  The statutory limitation applies "in

any action brought against a judicial officer for an act or omission taken in such

officer's judicial capacity…."  42 U.S.C. § 1983.  There is no question that

Defendants function as judicial officers in the proceedings at issue and acted in a

judicial capacity in entering the Cease and Desist Order.  For this reason injunctive relief is not available.  Declaratory relief also is not available because the state provided an adequate remedy at law, which Plaintiff failed to pursue, in judicial review under the Georgia APA.  *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2006); *see also Simmons v. Edmonson*, 2006 U.S. Dist. LEXIS 75127, *5-7 (N.D. Ga. Oct. 16, 2006) (Duffey, J.).[4]

### E. The Complaint Fails To State A Claim

#### 1.  Count I And Count II Fail To State Equal Protection And Due Process Claims

As previously mentioned, the response fails to address the central shortcoming of the equal protection and due process claims in this case: that is, that Plaintiff and her teeth-whitening business are not treated differently at all and instead the same restrictions that apply to all persons who would provide dental *services* in Georgia have been applied to her business which admittedly provides dental *services*.

---

[4] The assertion in the response that Plaintiff "is not challenging the Board's past order and she is not seeking to enjoin the Board members in their judicial capacity" (Doc. 30-1 at p. 20) is emphatically wrong.  That is exactly what this case is about. *Bolin* involved judicial immunity, but it also recognized that, separate and apart from judicial immunity, "the 1996 amendment to § 1983 would limit the relief available to plaintiffs to declaratory relief" and further declaratory relief would not be available where there was an adequate remedy at law.  225 F.3d at 1242.

Plaintiff insists on likening her situation to the mere sale of teeth-whitening products.  But again the complaint makes clear that Plaintiff does not only sell a product but provides teeth whitening services.  The services include supervision and instruction on the application of teeth whitening products to a client's teeth.  (Doc. 1, ¶¶ 2, 3, 14, 15, 16, 20, 21, 42, 46, 47, 48, 58).  The services are provided in Plaintiff's rented medical office space, in a chair provided by Plaintiff for the application process, using an "'enhancing light,' which either the entrepreneur or the customer may position in front of the customer's mouth," (*id.*, ¶ 16), and by "techniques" Plaintiff claims to have learned in training to provide the services.  (*Id.*, ¶¶ 42, 46).  Indeed the complaint asserts that Plaintiff "invest[ed] in equipment, supplies and training to provide the services to the public."  (Doc. 1, ¶ 46).  Plaintiff does not merely sell a product.[5]

Because Plaintiff does not merely sell a product, she is not similarly situated to "those who sell teeth-whitening products for use at home" and her equal protection claim fails.  *See Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002) ("The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner.")); *see also Campbell v. Rainbow*

---

[5] Although the response attempts to downplay the referenced fact assertions in the complaint, as it must it acknowledges that Plaintiff provided and wants to continue providing teeth whitening services.  (Doc. 30-1 at pp. 22, 26).

*City*, 434 F.3d 1306, 1314 (11th Cir. 2006) (noting "different treatment of dissimilarly situated persons does not violate the equal protection clause").  Again in equal protection analysis comparators must be similarly situated in all relevant respects.  *See Campbell*, 434 F.3d at 1314*; accord Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202-03 (11th Cir. 2007).  There is no merit to the assertion in the response that those who merely purchase (or sell) teeth-whitening products for home application are similarly situated to Plaintiff, where by her own pleading Plaintiff and her business provide teeth whitening services over and above the mere purchase, sale or self-application of such products.

Plaintiff also fails to show that the restriction at issue is not rationally related to a legitimate state interest.  While the equal protection clause requires similar treatment for similarly situated persons, it "does not forbid classifications." *Nordlinger v. Hahn*,  505 U.S. 1, 10 (1992).  In the absence of a fundamental right or protected class, there is no equal protection violation where a classification rationally furthers a legitimate state interest.  Again the analysis is highly deferential.  *See Haves v. City of Miami*, 52 F.3d 918, 921-922 (11th Cir. 1995) (internal quotations and citations omitted).  On rational-basis review, a classification in a statute has a "strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every

conceivable basis which might support it." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314-315 (1993) (citations omitted).

The stated regulatory goal of the Dental Practice Act is to protect the public health.  Protecting public health is a legitimate state interest.  *See, e.g., Deen v. Egleston*, 597 F.3d 1223, 1229 (11th Cir. 2010).  The response does not deny this and instead posits that perhaps after discovery Plaintiff could show that the "asserted interest in protecting public health and safety is really just a smokescreen for economic protectionism."  (Doc. 30-1 at p. 25).  The response cites *St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013), as support for this argument.

The problem with this argument is that the complaint does not even hint at, let alone allege facts that plausibly show, entitlement to relief based on a claim of economic protectionism.  Plaintiff is not entitled to discovery on a claim that is not asserted and on matters that are not encompassed within the complaint.  *See generally ADA v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (explaining the *Twombly* plausibility standard requires fact allegations that raise a reasonable expectation that discovery will yield evidence).

For this same reason *St. Joseph Abbey* is not on point.  That case involved the question of whether a state regulatory agency had "authority to regulate casket sales in and of themselves when such sales are not incidental to the seller's

provision of any other funeral services." 712 F.3d at 220-221.  The regulation at issue granted licensed funeral homes the exclusive right to sell caskets in the state. The state actually asserted "economic protection of a discrete industry" (the funeral home industry) as one basis for its regulation.  *Id.* at 221-222.  Alternatively, the state argued that the restriction was proper as an exercise of its "police powers in protection of consumers and public health."  *Id.*  The Court rejected economic protectionism as a legitimate government interest, and it also rejected the alternative rationale because as stated the regulated conduct -- mere casket *sales* -- was "not incidental to the seller's provision of any other funeral services" that were subject to the applicable state regulatory scheme.  *Id.* at 223-227.

This case is not at all like *St. Joseph Abbey*.  Economic protection is not asserted as a basis for the State restriction at issue.  And this case is not about product sales.  Rather, Georgia has determined that the unlicensed practice of dentistry is "a menace and a nuisance dangerous to the public health," O.C.G.A. § 43-11-2(e), and enacted a statutory scheme to define and regulate the practice of dentistry.  Again to this end, the Dental Practice Act speaks in terms of dental services, including services provided for the purpose of changing the appearance or shade of teeth, and it seeks to ensure that dental services are provided by persons who are trained and licensed to provide such services.  *See* O.C.G.A. § 43-11-1(6)

- 18 -

(defining "dentistry" as "evaluation, diagnosis, prevention, or treatment ...");
O.C.G.A. § 43-11-17(6) (defining the practice of dentistry as including "any
person who performs any of the following procedures, operations, or services …").
The State rationally could determine that the public health is best served by
requiring that dental services be provided by persons who are trained and licensed
to provide such services.  Plaintiff's business is one that provides dental services,
but she is not trained or licensed as a dentist and she is not similarly situated to
such persons.  (Doc. 1, ¶ 63) ("Plaintiff is not a licensed dentist and is not eligible
to become a licensed dentist without nearly a decade of training and education.").

As previously stated, there is no impermissible classification at work here.
Plaintiff and her business have not been subjected to unequal treatment and instead
are subject to the same restrictions on the practice of dentistry as apply to all
persons in Georgia.  The restrictions rationally further the important state interest
of protecting the public health.[6]  Count I fails to state an equal protection claim,

---

[6] Again to the extent that a classification drawn by a State legislature is
improvident or unwise (which Defendants deny here), the remedy lies in the
democratic process, not judicial action.  *See Deen*, 597 F.3d at 1230; *Doe v.
Moore*, 410 F.3d 1337, 1346-1347 (11th Cir. 2005) ("The Constitution presumes
that, absent some reason to infer antipathy, even improvident decisions will
eventually be rectified by the democratic process and that judicial intervention is
generally unwarranted no matter how unwisely we may think a political branch has
acted.").

and because Plaintiff concedes that the same rational basis test applies to her due

process claim, Count II also fails to state a claim.

> **2. Count III Fails To State A Claim Under The Fourteenth Amendment Privileges And Immunities Clause**

Plaintiff concedes Count III fails to state a claim and should be dismissed.

For all of the reasons stated herein and previously, Defendants ask that the

Court dismiss the complaint and all of the claims asserted in this action.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

DEVON ORLAND          554301
Senior Assistant Attorney General

s/ Roger A. Chalmers          118720
ROGER A. CHALMERS
Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Roger A. Chalmers
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C.

The brief is prepared in 14 point Times New Roman font.

s/ Roger A Chalmers

## CERTIFICATE OF SERVICE

I certify that I have this day served the foregoing pleading with the Clerk of

Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

 Yasha Heidari
 Lawrence G. Salzman
 Paul Sherman

I further certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants: NONE.

This 27th day of May, 2014.

s/ Roger A Chalmers

- 21 -